Our last case this morning, which deals with the same part of the body that these last cases have dealt with, the mouth, Elaine Vieth and Reinhold Vieth v. MOM Enterprises, 2025-1159. Dr. Anderson, when you're ready. Thank you, Your Honor. May it please the Court. The 958 patent addressed the critical problem of how to safely and effectively administer the necessary amount of vitamin D, just a single drop, to provide a therapeutically effective dose without overdosing the recipient, particularly an infant. The claims require that the drop... Excuse me, if I could ask you, please. You have here claims 1, 3, and 5, correct? Yes. And the board, as I understand it, you have the Harder reference, you have the Wolff reference, you have the Pharmacopoeia and the Blass reference, using Harder, Wolff, and the Pharmacopoeia for 1 and 5 and bringing Blass in for 3. It seems to me to be a very, if I can use the term, impressive alignment of prior art. And I don't see a good reason to go against that prior art. What is your best argument against each of those combinations for claims 1 and 5 and 3? Certainly. And I'll start with what the claims require, that the drop adheres to the object. And the agreed construction has two distinct requirements. First, the drop must not drip or roll off. And second, the drop must not coat or adhere to the object so as to prevent efficient removal. In holding that this advance, that the 958 patent was obvious, the board made several fundamental errors. First, it conducted a flawed inherency analysis. The board concluded that the Harder reference, describing oil on a spoon, inherently satisfied the adherence limitation by looking at the 958 patent specification, which tested different compositions on different surfaces, pacifiers, and nipples, not spoons. That was an improper analytical leap, and the most pertinent case is this court's decision in Parr Pharmaceuticals v. TWI. Second, the board failed to apply both parts of the agreed claim construction. It never properly analyzed Harder or any prior art for the second part of the claim construction, whether the drop coats the object so as to prevent efficient removal. And then third, it refused to apply a presumption of nexus when considering the objective. Why did the board not address, in your view, it seemed to me it covered it, the point about removal. In other words, being too sticky to be removed. I'm sorry, I didn't understand. In other words, as I understand your argument is that the second part, there's two parts to the claim construction. The material must be able to be removed, and it shouldn't drop off. It should adhere to the item. And then the second one is that it shouldn't be so sticky that it can't be removed. How did the board not address that? Because I think the board realized that there was no evidence in the record from MOM or its expert addressing that point. MOM's expert, Dr. Williams, said that Harder admitted and agreed that Harder does not say anything about efficacious removal. That's at 4905 to 49, excuse me, 47, 4305 to 4309. And so in order to try to get around that, it said, well, it's inherent looking at the specification of the 958 patent. But the 958 patent specification says nothing about putting a different oil, pure MCT, on a spoon. Harder only talks about putting Vegantal oil on a spoon. And there was no testing by anyone, no evidence whatsoever to show that that oil on a spoon provides or does not drip, but still does not prevent efficient removal. There is no evidence, no testimony submitted. Dr. Williams submitted nothing. And Dr. Raj only testified about, well, if you manipulate the spoon and put it at a certain angle, then it'll drip off. But she didn't go to the next step and examine whether there is efficient removal, whether you get an efficacious dose. That's what's missing here throughout the analysis. And you can't, as the board did, say, well, the argument about not adhering, the second part, is overcome by what's inherent in the MCT as shown in the specification of the 958 patent. That is not a proper analysis under the Haas-Spira decision, which the board and MOM relies on, and which Judge Lori authored, because that involved a chemical compound. Here we're talking about basically having a substance. And through all of the testing that the VEETS did, determining that, it met, if you will, the Goldilocks situation, that it would not drip off, but by the same token, it wouldn't adhere so much as to prevent efficient removal of an efficacious dose. And there is nothing in the record on that. The board then compounded, or has even more clearly made this error, when it considered Claim 3. Claim 3 requires a pacifier or nipple. And the board said, the entirety of its analysis, which is at page 85, is that, well, we don't need to go there because the MOM relies on Harder. But Harder says nothing, says nothing about a pacifier or a nipple. What about BLAST? They didn't, that's not the combination. And BLAST doesn't show that because BLAST is a water-based solution, which is repeatedly dipped in this water-based solution, simply to distract the infant from the pain of getting a heel prick. It has nothing to do with administering any sort of a pharmacological substance. And what the board said is, you know, we don't even, they didn't even consider, there's no analysis of Harder plus BLAST revealing the adheres limitation for Claim 3. That wasn't what MOM argued, and that's not what the board analyzed. And without those findings, this court can't substitute its analysis, or what it might think is appropriate, because we've never had a chance to respond to those arguments. The key thing here is that if you look at the board's decision at Appendix 34 and 35, they say that, first they say, well, we don't need to get it to anything about the adherence aspect, because that's inherent in Harder. It's not. Dr. Williams didn't make that conclusion. There is nothing by Raj that makes that conclusion. There is nothing that makes that conclusion. And the specification doesn't show that it is inherent in MCT on a different substance, on a different subject. All the specification shows is if you test... So the board says about the inherent, and then 34 to 35 it says, to the extent that it's not inherent, it nevertheless, Harder nevertheless suggests this limitation. So what about that? That also is an inadequate analysis, because if you read what it says on page 35, it says, it's focusing solely on the do not drip part of the construction. It says, quote, a posita would understand that any substance that does not adhere to the surface would naturally drip off. That doesn't say anything about the second part of the claim construction, Your Honor. And it can't, because Dr. Williams agreed that Harder says nothing about efficacious dose, you know, efficient removal. And that's, as I said, Appendix 4, 4305 to 4309. His report has no testing about coding. In fact... So you've a couple of times used the expression efficacious dose. Where do you get that? That's not in the claim construction. Well, what the claim says is the drop must not coat or adhere to the object so as to prevent efficient removal. It's efficient removal. I'm just saying efficacious as the substitute for the multiple words, coat or adhere so as to prevent efficient removal. The key is you have to be able to remove it efficiently so that you get a therapeutic dose. That's clear from the patent. That's the whole reason for the patent is that this particular method allows the administration of by a single drop of vitamin D and you get a sufficient dose. That's what the testing shows is that if you use this material on a nipple or pacifier in particular, you get 96% of the dose. And that's an efficacious dose. But that's efficient removal. That's efficient removal. You have to have efficient removal. It would do nothing as if all you could do is remove 1% of the dose. That doesn't get you anywhere. That wouldn't be an advance. And to the extent the board was saying that, well, it's inherent in MCT, that's simply wrong. That is an improper analysis under Hospira which involved a chemical compound. Here, the 958 patent's adhere limitation doesn't describe what MCT does sitting in a bottle. It describes what happens when you apply a single drop of MCT to a specific object and have someone suck or lick it off. It's a method-specific, object-specific functional interaction. And without efficient removal, there's nothing. And the board, you know, didn't do any analysis of whether this was, you know, whether there's a generally reasonable expectation of success. They don't have any analysis saying that the efficient removal aspect is anywhere in the prior art. And they have no analysis of that there would be a reasonable expectation of success for the claim as a whole, particularly with regard to Claim 3. The only way that they sought to get around the efficient removal aspect of the claim is to simply say, well, it's inherent. But that's not, doesn't get you there because harder is a spoon and vegan tall oil. Whereas the patent specification is talking about MCT and a nipple or pacifier. And you can't make that analytical leap, which is what they did. So the board in the paragraph right in the middle of page 34 says, look at this patent's own specification, which makes clear that MCT, in fact, you know, the very same stuff that was in harder, necessarily adheres to the surface of objects. And with presumably your own construction of adhere. That is, all the patent shows is that for the specific oils tested on the specific surfaces, that MCT satisfies what I've called the Goldilocks combination of no drip and efficient removal. That does not translate to harder, where it is vegan tall oil and it's a spoon. There is nothing in harder that suggests or teaches or renders obvious or makes it inherent in MCT that it will, that MCT on a spoon will not drip and will not impede efficient removal. And in fact, the only evidence in the record is contrary to that, and that's Dr. Reed's testing, in which he put a drop of pure MCT in a spoon and showed that it coated. That showed then that you have to find out, does it impede efficient removal? Yeah, but it coated, but did that show that it coated in such a way as to not be efficiently removable? No, it just showed that it coated. We don't have the burden to prove that it causes efficient or prevents efficient removal. That's mom's burden of proof. And they didn't present any evidence of that. Neither Dr. Reed, excuse me, Dr. Raj nor Dr. Williams or anything else. There is no evidence of that and no analysis. Just briefly before my time expires, I would like to say a few words, as we said, that they didn't apply the second part of the adheres limitation. But in addition, there is a clear error with regard to the objective evidence on obviousness, where the board refused to apply a presumption of nexus based on an alternative instruction, which the unrebutted evidence was that it's an alternative way of using the product and not the intended use. The board found Mr. Tomovsky's evidence credible, but then ignored this substantive testimony. The alternative instruction is not separately patented. It's not critical to the function of the product. And it's particularly important here because that's what the board then used to just brush aside the secondary, the objective evidence of indicia, particularly the unrebutted admitted copying by mom. Mom did not rebut and did not challenge the evidence of copy. Thank you. And if there's no further questions, I'll save the balance of my time for rebuttal.  May I please the court? Lauren Degnan from MOM Enterprises. Let me start with the inherency finding. And really, the passage, your honor, was pointing to it in appendix 34, where the board finds that, it finds that the patent itself, their omissions help establish the inherency. And what the board finds there on appendix 34 says specifically the patent teaches that there's only two things that affect the adherence limitation, that is viscosity and chain length. And that finding is supported by substantial evidence in the form of the patent itself, at column 6 starting at 34 through the end of column 7 around line 27. And it also is with Dr. Williams' testimony. His testimony is at appendix 1734-35. So when the board finds that the specification identifies only that the actual finding is supported by substantial evidence, we heard nothing from my colleague about that finding and the substantial evidence that supports it. And so with that finding, we are able to look at the omissions in the patent itself, and the board relies on those omissions to find that the limitation, the adherence limitation as a whole is met by the disclosure. And if you look at column 6 starting around line 34, and all those omissions, both sentences of the claim construction are being applied. Even on line 37, it talks about the liquid does not coat or adhere to the pacifier so as to prevent efficient removal of the vitamin D. So in this inherency analysis, the board is in fact applying the entire claim construction, is relying on the omissions in the specification which it's allowed to do to establish inherency of MCT. And what counsel is complaining about is that, well, those omissions relate to a very specific product on a very specific substance. But given the board's finding that what that matters is the chain length, and we have the chain length in HARTR, as the board explicitly found based on the explicit teachings of HARTR, we know that we can rely, it doesn't matter what object, whether it's a spoon or pacifier, because of the board's understanding. But given the board's finding that what matters is the chain length, and it doesn't matter that the specification did one particular kind or brand of MCT oil, and HARTR talks about this other vegan oil. And so that is substantial evidence that fully supports the board's findings on the adherence limitation with respect to HARTR. Substantial evidence. The chain length basically relates to viscosity. That is what the board found. It found that based on William's testimony as well as the specification that the chain length is. It adheres and it is removed at the right time. That's right. It has the sufficient removal aspect of the claim construction. The board also found really more explicitly with respect to on page appendix 45 where it says, even if the drop rolls into the bowl of the spoon as observed by Dr. Reed, we disagree with patent owners that this makes efficient removal of the drop difficult, if not impossible. That is a finding the board has made that this efficient removal aspect of the claim construction is in fact met. And these improperly tries to parse the second sentence of the claim construction. But when you read the sentence as a whole, you have to have both. And so by finding efficient removal, you are necessarily finding that there's not the kind of coding that the construction prevents. But that second sentence was not quoted in that paragraph of page 34 of the board's opinion, right? On page 34, you are quite right, Your Honor. The board does not quote that second sentence. And that is not a problem given the nature of its analysis and the citations it made. And we can, of course, discern the board's path. So where precisely did the board find and with what evidentiary support that I think, as you said, only the chain length affects the adherence that no other properties do? So that once you know the chain length, you know that adherence within the meaning of the patent is present. OK, Your Honor. That's on appendix 33. And that's at the bottom of the paragraph on 33. It says, we agree with petitioner that the specification identifies only viscosity and triglyceride chain length as impacting adherence, such that the adhering property claimed is merely a property of the particular oil for delivery of vitamin D. It cites the patent itself. You see there column 634 through 721 in the Williams declaration at paragraphs 50 to 52. That corresponds to appendix 1734 through 35. Thank you. Counselor mentioned what sounds like a claim construction of efficient removals as having some sort of efficacious dosage. That's obviously a claim construction that was not raised to the board and far too late to be raising now. Efficient removal was the word and the language that the board applied throughout its opinion, including on page 45, as I just mentioned. The evidence that the board cited with respect to efficient removal included Dr. Raj's opinion. And her opinion, she was not required to do any specific testing. Her opinion was taking a look at the tests that were run and knowing how to tilt the spoon in an advantageous way. And she then applied based on her vast experience. Just because this is a method claim, what you're looking for is something in the prior art that sufficiently teaches anything within the claim, which is spoon used in any particular way. It doesn't have to have that result regardless of the way one might use the spoon, right? That's exactly right, Your Honor. The claim just speaks of an object. It doesn't even require a spoon. But an object, a spoon certainly qualifies as an object for the purpose of the claim. And so just the substantial evidence supporting the board's finding on this issue of how using a spoon to deliver vegan tall oil with a vitamin D into a baby's mouth would have been, would have had efficient removal, is Dr. Raj's testimony in her declaration at 2988-89, in her deposition 7147 elsewhere about how baby suck spoons eat off the spoons rather effectively. Again, even Dr. Williams kind of explained it was both common sense and human experience that that was the case. And so this issue of the adhere limitation, substantial evidence supports the board's findings. Moving on to, if I may, moving on to Claim 3, which is the pacifier limitation being added. Substantial evidence supports the combination, the motivation to combine, in that the board made a specific finding that people of skill in the art would have been motivated to improve Harder's method of administrating the vegan tall oil by spoon, given that a spoon is perhaps not the most natural way to feed a baby, and that people of skill in the art would have known that a pacifier is more likely to trigger the sucking reflex rather than a spoon. That was at Appendix 84. Similar findings there on page 83 as well. The evidence is overwhelming. Dr. Williams, again, in Appendix 1752, Paragraph 106, makes that comment. But he is not alone. Even these experts and witnesses agreed that one of the skill in the arts, this is Horowitz, that the board actually cites at Appendix 86, citing him at 2571 and 2573, that persons of skill in the art would explore other options to using a spoon because he characterizes it as an unnatural way to feed a newborn. And so there's substantial evidence supporting the motivation to combine in order to improve the method of Harder. I might touch at the end here, unless there's questions so far on the secondary considerations. Was there any discussion in the proceedings below about the age of the human being that is at issue? Certainly the patent talks about defining an infant as a small child and defining adult as more of a larger child. I believe that was in Column 4 at the very top, the lines 1 through 3, talk about an infant captures babies and small children. So in terms of was that aspect of what an infant is specifically raised, I'll be candid. I don't recall a page citation. I don't have a citation page in my notes. But certainly that concept was there given the nature of the specification. On secondary considerations, this major issue is the failure to grapple with factual finding the Board made with respect to co-extensiveness. The Board found that looking at the evidence, including the labels themselves, that there were two alternatives of equal weight. One is the patented method. One is the unpatented method in the prior art, which is mixing in food or milk. Even some of the evidence that these produced in the case and the Board examined and relied upon, the customers chatting about the detox product talked about putting it in the mouth or putting it in the food. The Board looked at this evidence and determined that the unpatented method was of equal weight. And so the test for the legal test, this Court has said, and for example, TEVA on one side of the spectrum is nothing more than an additional insignificant feature. That's what they need to prove. It is nothing more than an additional insignificant feature. But the other end of the spectrum is the idea of a critical, unclaimed feature. That is, perhaps in a different patent, it materially impacts the function. Counsel assumes that they need to prove it just wasn't on this very far end of the spectrum. But the legal test requires looking at the significance, which the Board here did when the Board said it was of equal weight of these instructions. And that puts us in the realm of a failure to prove co-extensiveness. Those findings are supported by substantial evidence. As I said, really the labels themselves kind of do the job alone. The main complaint is that the Board did not accept Mr. Tamofsky's testimony. But substantial evidence review doesn't look for, is there any evidence the Board could have supported a finding in their favor? The lens we look at is substantial evidence. And using that lens, the Board was completely free to reject Mr. Tamofsky's testimony and make his own interpretation of the labels. And so the presumption of nexus finding is supported by substantial evidence. I'll end with just a brief mention about the copying. We are all living under the substantial evidence standard of review here, which is the Board found some weak evidence of copying. On a de novo review, I would have plenty to say as to why there was no copying at all. But here under a substantial evidence standard, the characterization of that evidence is weak, is fully supported by the evidence. For example, the Board found there was some circumstantial evidence at the instructions were copied because they were the same and there was access. That is all. But the Board also found that these could not and did not prove that mom intentionally copied the oil used in the BBD drops product, which was being used in other competitive products. At the time of the reformulation, other products in the markets also used MCT. So the Board on Appendix 82 explains why it looked at this evidence. In addition, I should mention it accepted the temporally impossible argument we made about why mom could not have stolen Ddrop's market share. That's in Appendix 74, given the timeline, which I won't get into given my time. But when we look at the Board's weighing of the evidence, substantial evidence supports its finding of a weak circumstantial evidence of copying, and it also supports the Board's weighing of the minimal secondary considerations against the extremely strong prima facie case. So on balance, if we apply the standards of review that apply here, the only option is to affirm. Thank you. Thank you, Mr. Aikman. Dr. Anderson. Thank you, Your Honor. With regard to my opposing counsel's arguments, Dr. Williams, if you look at Appendix 1734 in the paragraphs 50 to 52, there is no analysis of the efficient removal requirement. And if there is incomplete removal of the drop caused by coating, adhering, that is not efficient removal. Dr. Raj did not test the coating or adherence of efficient removal. All she did was speculate that, well, if you tilt the spoon so that it's tilted down, one drop will fall off. That doesn't address the second part of the claim construction. The Board's inherency analysis is completely flawed because they take the analytical leap from a spoon and vegan tall oil, and they say, well, since you've got MCT on these other substances, a pacifier and a nipple, then it's inherent. But there is no evidence in the prior art that it is inherent in MCT that it will not drip off but still allow efficient removal. There's nothing in there. They didn't conduct that analysis anywhere, and that's a fundamental flaw. And throughout their analysis, if you look at what they said, they say nothing where they directly address the efficient removal option. And if I may, I'm sorry, my time is up. You may finish your sentence. Thank you. I was going to say that with regard to the secondary indicia, there is no finding of equal weight, and the only evidence is Mr. Tomofsky's evidence that the alternative instruction is not the intended use. There's no evidence of marketing of that. And the few outlying comments by customers are outweighed by the much more significant number of customers who say it's the one drop on a nipple or pacifier that makes the difference here. Thank you, Your Honors. Even though that was a long sentence. Even though that was a long sentence. Case is submitted. Thank you to both counsel.